THE CITY OF JACKSONVILLE, APPELLANT, VS. THE ÆTNA STEAM FIRE ENGINE COMPANY, APPELLEES.

1. Where the declaration sets up a cause of action enuring jointly to several parties, and it appears upon its face that only some of the joint contractors are plaintiffs, (no death or other fact showing survivorship of the right of action in the plaintiffs being set up,) it is a demurrable defect, and a demurrer of plaintiffs to defendants' pleas in bar should be overruled, whether the pleas in bar set up a good defence or not.

2. No obligation to pay the members of a volunteer association for the extinguishing of fires in a municipal corporation arises or is implied from the simple rendition of such service, and where they claim compensation the burden of proof is upon them to show a contract to that effect.

The evidence in the record of this case is substantially as follows :

The record of the city covering the matter of the compensation of the Ætna Steam Fire Engine Company clearly discloses a state of

facts and contract which admits a debt by the association to the corporation on the 10th of March, A. D. 1871, and provides for its satisfaction and payment by service to be rendered thereafter, upon terms to be thereafter agreed upon by the city and the com-' pany.

A person who was Mayor of the city in 1869, 1870, 1871, 1875 and during other years to 1881, swears that according to his recollection the city assumed the outstanding debt of the company, and took a mortgage on the engine to secure its repayment; that he was Mayor at the time the question of paying the companies came up; that he introduced an ordinance allowing compensation, and that to the best of his recollection it was not passed. No ordinance or contract allowing compensation is shown by the records of the city.

A person who was Clerk of the City Council during the years 1873, 1874 and 1875 swears that during that time the city passed a resolution transferring the engine to the company, the amount due the company under a contract previously made with them and to his term of office to be allowed as payment for the engine, in whole or in part, so far as it would go. This resolution, he swears, was lost while he was Clerk and before he recorded it. The contract, he swears, provided in terms that the city should pay to each of the fire companies twenty-five dollars for each hour they worked at a fire in the city; that he only remembers having seen and read it over; that he does not recollect its date, and that it was lost while he was Clerk: *Held*, That the finding of a referee awarding damages at the rate of $25 per hour for services rendered from February 12, 1871, to and including July, 1878, for the sum of $6,900, giving a credit for the admitted debt of the company to the city of $3,500 on the 12th of March, 1871, is clearly contrary to the evidence, and the only consistent construction of the testimony of the Clerk, with the records of the city and the acts of the parties, is that the contract, to the existence of which he swears, bore date before the 12th of February, A. D. 1871, and was thus controlled by the terms of the subsequent contract of that date; and that such finding of the referee, being clearly contrary to the testimony, should be set aside and a new trial awarded.

The facts of the case are stated in the opinion.

Appeal from the Circuit Court for Duval county.

This case was tried by Mr. Manuel C. Jordan, as referee.

*C. P. & J. C. Cooper* and *John Earl Hartridge* for Appellants.

*T. A. McDonald* and *A. W. Cockrell* for Appellees.

The referee by whom the case was tried, finds:

1. The contract was made; 2. That it was in the capacity of the city to make such a contract; 3. That the services rendered were worth the amount of judgment, after allowing the city the face of a note due from the appellee to the appellant, introduced in evidence.

The appellants seeks to reverse said judgment upon the grounds:

1. The appellee has not proven it is a corporation.

We say the declaration did not allege it was a corporation, nor was a demurrer interposed by appellant on that ground. But as the proof shows the appellant contracted with the appellee, whatever it may be, in the very same capacity in which it sued, the city is estopped from denying the legal existence of the party with whom it made the contract, and is estopped from denying its capacity to sue for a breach of that contract, when an enforcement of that contract or of rights arising from it is sought. 61 Ala., 241, and the cases therein cited; Angel & Ames on Corporations, §636; Eaton vs. Aspinwall, 19 New York, 119.

This in reply to the argument of counsel for appellant, that appellee *failed* to prove it was a corporation. But suppose the appellee is only an association, or firm composed of certain individuals; then the suggestion is made that all the joint contractors claiming by virtue of the contract, did not join in the suit. We submit, the universal rule is the defendant thus sued must make such an objection " *in limine,*" and can do it *alone* by plea in abatement. 10

Sergt. and Rawle, 257 : Garnett vs. Tiffany, Wyman & Co., Minor, 167.

2. The appellant says the contract declared on was "*ultra vires*."

This proposition raises the inquiry, can the city of Jacksonville, organized under the general law of Municipal Incorporations, protect itself from fires. If so, then as public duties are commensurate with public powers, *it is its duty to do so.*

Conferring the power on an officer to do such act creates a right in those for whose benefit the power was conferred, and they may insist on the execution of the power *as a duty.* Smith's Commentaries on Statutes, 595 to 604 ; 9 Porter's Rep., 395 ; 19 Ala., 462.

Section 15 of the incorporation act confers upon the city the power specifically to do certain things, and then, " and to do and perform all such act or acts as they shall deem necessary and best adapted to the improvement and general interest of the city or town." Equivalent words in the the charter of Birmingham, Ala., " and to do every matter and thing which they may deem necessary for the good order and welfare of said city," were construed by the Supreme Court of Alabama, in 63 Ala., 355, the court saying, " good government and good order and welfare of a city imply much more than mere preservation of social order, sanitary regulations, and appliances for extinguishing fires * *. * are certainly within the purview of good city government." We do not wish to be understood as affirming that any specific grant of power is necessary to the performance of this very necessary police function. We hold it is inhernet in every city government, unless taken away by statute. 1 Dillon Munic. Corp., §94 ; Robinson vs. City of St. Louis, 28 Mo., 488.

Thus the power and duty of a city to make such a con-

tract is established *affirmatively* by appellee. But there is no *presumption* of illegality, or abuse or excess of powers, attaching to the contract of a corporation; "*prima facie,*" they are valid, and the burthen of showing invalidity rests on those assailing them. Greene's Brice's *Ultra Vires*, 39-32; 54 Ala., 75.

But, says the appellant, conceding the powers of a city to make such a contract, the evidence thereof can only be found according to the requirements of the by-laws, in the records of its proceedings. Anciently it was held that an action of assumpsit could not be maintained, because a corporation could not contract by parol. But this doctrine is obsolete. 45 Ala., 243; 46 Ala., 411.

Unless restrained by legislative enactments to a specific mode, corporations may contract as a natural person. 62 Ala., 389.

Again, conceding the contract sued on was in contravention of the by-laws, it is submitted, the forum in which this suit was held is not the court to enforce the by-laws of the corporation. The corporation had as much authority to make the contract as it had to make the by-laws. The text books and the adjudications settle this point against the appellants. Angel & Ames on Corporations, §362; 64 Ala., 503.

As to the facts found by the referee, this court in 14 Fla., 466, says: "The report of the findings of fact by the referee, being in the nature of a special verdict, this court will not disturb such findings if supported by evidence, the referee being the judge of the weight of evidence, and credibility of testimony."

Mr. Justice WESTCOTT delivered the opinion of the court.

This is action of assumpsit by some of the persons com-

posing the Association known as Ætna Steam Fire Engine Company against the City of Jacksonville, to recover for services rendered from February 12, A. D. 1871, to the first of August, A. D. 1878, by the persons composing the Ætna Steam Fire Engine Company, in extinguishing fires in the City of Jacksonville, under an alleged contract of the city to pay the company twenty-five dollars per hour for actual service rendered.

The case was tried by a referee and the judgment of the Circuit Court is based upon his findings. The judgment rendered was in the name of the Ætna Steam Fire Company, no mention of the persons composing the company being made in the judgment. The declaration like the judgment is entitled in the name of the Ætna Steam Fire Engine Company, while the plaintiffs in the body of the declaration are alleged to be " Charlie R. Bisbee," twenty-one others who are named in the declaration, " and others," who are associated together under the name of " the Ætna Steam Fire Engine Company, for the purpose of carrying on and conducting the business of extinguishing fires in the City of Jacksonville and vicinity." There is no allegation in the declaration that the company was a corporation, or that any of the " others " composing the company had died since the creation of the alleged contract or that they were in any manner disqualified to sue. Throughout the entire declaration the cause of action is alleged to have accrued to the " plaintiffs," which as a matter of course means the persons constituting the association or company, and not the company distinct from the members composing it.

To this declaration the city interposed five pleas which are stated by the attorneys for the city here to be substantially :

First. That the plaintiffs were not incorporated.

Second. That the parties composing the company do not carry on the business of extinguishing fires as alleged, that they are members of a volunteer company, organized as a part of the fire department of the City of Jacksonville, under the ordinances of said city, and that the city " never was indebted " as alleged by plaintiffs.

Third. That the city never promised, as alleged.

Fourth. Is a plea of the general issue to the common counts.

Fifth. Defendant plead, the city ordinances creating the fire department of the city, and in that connection set up the defence of *ultra vires*.

Plaintiff demurred to defendants first and fifth pleas, and joined issue on the second, third and fourth pleas. The demurrer was sustained. After trial by the referee there was a finding upon the merits for the plaintiffs, awarding damages and costs.

From this judgment the city appeals.

We examine first the questions arising upon the demurrer to defendant's first and fifth pleas.

As we subsequently discuss and dispose of this case upon its merits, we deem it unnecessary here to consider the question of the legal sufficiency of these particular pleas, and will only discuss the demurrer in reference to its bearing upon plaintiffs' declaration.

The demurrer here is to defendant's pleas in bar of the action. It reached the plaintiffs' declaration, and whether the pleas were good or bad, if the declaration disclosed demurrable defects the judgment upon the demurrer should have been for the defendant, as even a bad or insufficient plea is a good answer to a bad declaration. Johnson vs. The Pen. and Per. R. R. Co., 16 Fla., 657.

It is certainly unnecessary to refer to adjudicated cases to

sustain the proposition that a suit by the members of an unincorporated association should be brought in the name of all the individuals composing the company. Their relation is that of joint contractors. There are some cases of suits in a partnership name in which the courts declare that such a suit presents the case of misnomer of plaintiffs, and that the defect cannot be taken advantage of by a plea of *non est factum*, or like plea, where the contract was in the name of the company, but that it must be taken advantage of by a plea in abatement. Such is the case of Porter vs. Cresson, 10 Sergt. and Rawle, 358, cited by the appellees here. The pleas there were *non est factum* and payment. Plaintiffs had declared on a note as given to Cresson, Wistar & Co., omitting the names of the members of the firm, and suit was brought in that name. On the trial it appeared that the company was composed of four persons, and the defendants requested the court to charge the jury that the plaintiffs were not entitled to recover because all the parties plaintiff were not named in the writ, but the court instructed that the defence was too late, and that the plaintiffs were entitled under the pleadings to a verdict. Upon error this judgment was sustained. Duncan, J., for the court, says : "It is certainly true that in all legal proceedings the parties, plaintiffs and defendant, should be brought by name upon the record, and it is irregular to bring an action for or against a company without naming all the parties. Yet, this is not error, for after a verdict a court will presume A B & Co. to be the real name of the party. There is a case decided, which I am not just able to lay my hands on, in which the widow Moler and her son was considered as the name and cognomen of a party." The court held that under the plea of *non est factum* the issue was not whether this was a bill given to a company, whose names were A B & Co., but

whether the defendant did not execute the deed to Cresson, Wistar & Co.• The court treats the case as one of misnomer of the plaintiff, and holds that it was to be taken advantage of by a plea in abatement as it would be in a case where " the plaintiff misnames himself." So in the case of Salisbury *et al.*, vs. Gillet *et al.*, 2 Scam., (Ill.,) 290. The action there was debt by " Salisbury & Collins against Gillett & Avery." The plea was *nil debit*. The proof was a note by " Gillett & Avery" to "Salisbury & Collins," and a judgment for the defendants was reversed upon error. The court remarks : " The action is brought in the names of the payees, and if there is anything wrong, it must be in the Christian names of one or both of the plaintiffs. Such a mistake, however, can only be taken advantage of by plea in abatement." Declarations in the firm name were sustained under statutes in Gordon & Washburn vs. Jenney & Co., in 1 Iowa, 182, and in Abernathy vs. Lattimore, Jenkins & Co., 19 Ohio, 288. As to suits of this character, see also the following cases : Seely vs. Oschenck & Co., 1 Pennington, N. J., 75 ; 3 Caines, 170 ; 2 Penn., (N. J.,) 984 ; Tomlinson vs. Burke & Clarke, 5 Hal., (N. J.,) 295 ; Pate vs. Bacon & Co., 6 Munf., 219 ; Marshal vs. Hill & Henderson, 8 Yerg., 101. These cases present a variety of judicial opinion upon this subject, both interesting and instructive, and the case in 10 Sergt. and Rawle, is relied upon by the appellee as decisive of this case. We do not think, however, that this case or any of the others mentioned above are applicable to the pleadings here, and for that reason we will not attempt to frame a rule from these inconsistent decisions.

Upon the face of this declaration it appears that there is a joint obligation as to many persons, some of whom are named and others are simply described as " others." The obligation is joint as to all of them, or the survivors of

JUNE TERM, 1883.     109

City of Jacksonville v. Ætna Fire Engine Co.—Opinion of Court.

them. It appears from the declaration that there were others, joint contractors with the parties named when the contract was made; that these persons, whoever they are, had equal and like rights with the plaintiffs, and there is no allegation showing the names of the other parties or that they have since died, or in any other manner been deprived of a right of action. This appearing upon the face of the declaration a plea in abatement is not necessary to raise the question of its sufficiency. It is unnecessary for the defendant to show by plea in abatement, or in bar, a defect apparent upon the face of the declaration of plaintiffs.. If it is a demurrable defect the plaintiffs' demurrer to the defendant's pleas to the action reaches it and the question here is, is this in law a good declaration.

The defect here is not a misnomer of parties, but a non-joinder of parties. The rule as to which, as stated by Chitty and uniformly sustained by the authorities, is that " in all cases of contracts if it appear upon the face of the pleadings that there are other obligees, covenantees or parties to the contract, who ought to be, but are not joined as plaintiffs in the action, it is fatal on demurrer or on motion in arrest of judgment or in error, and if there be a legal ground for omitting to use the name of one or more of the parties as his death, &c., it is necessary to show such excuse for the non-joinder in the declaration." 1 Chitty on Pl., 16 ; Amer. Ed., asterisk pages 15, 16. Parties in such a situation must join. " The question, who shall be plaintiffs? the law settles for them in the construction of their contract." See cases cited in 1 Chitty, same Ed., asterisk page 10, last portion of note y.

The judgment therefore upon plaintiffs' demurrer to defendant's pleas should have been for the defendant, overruling the demurrer. For, as we have stated, even if all of the pleas were bad, a bad or insufficient plea is a good

answer to a bad or insufficient declaration. For this reason alone we cannot, in view of the law, affirm this judgment. Again, the judgment does not purport to be in the name of the parties composing the company who bring the suit, but in the name of the company itself. The precise effect of this it is unnecessary to determine. What has been said would dispose of this case upon grounds which are technical in the sense that the case would not be decided upon its merits. But upon repeated reviews of the testimony in this record we can find no sufficient proof to sustain this judgment in favor of this company or of a judgment in proper form in a suit brought in a proper manner, in favor of the parties composing the association.

That the service was performed as charged for, we think the evidence establishes. It is shown that a small part of it was rendered outside of the city limits, but this is not embraced in the judgment.

For the plaintiffs, the testimony is substantially as follows:

The first witness, J. J. Holland, swears that he was Foreman of the Ætna Steam Fire Company; that he was present at its organization; proves the constitution and by-laws of the company, and the service rendered. The constitution shows that the company was organized January 8, 1868, but does not show that the organization expected compensation for their labor or service.

Alfred W. Lawson swears that he was the engineer of the company; that the engine was purchased by the company from William Jeffreys & Son, of Pawtucket, R. I.; that the fire company "had a draft from the city for $2,000 for the purpose of procuring an engine, in part payment, which draft was taken by Mr. Jeffreys; that the draft was, by the City Council, drawn upon themselves, and payable upon demand; that the city refused to pay the draft and it

was protested ; that the company at the same time paid Mr. Jeffreys $1,500 of its own money ; that a note was signed by Holland and M. L. Hartridge for $3,500 in place of the $2,000 note which (the note for $3,500) was taken up by the city, giving its note for that amount, the company giving the city a mortgage upon the engine for the amount of the note.

W. H. Christy, for the plaintiffs, swears that he was for three successive years City Clerk of the City of Jacksonville. The records of the city show these years to be 1873, 1874 and 1875. He says : " That during the time I was in office the City Council of the City of Jacksonville passed a resolution transferring the Ætna and other engines to the fire companies and the amounts due the fire companies, under a contract previously made with them and to my term of office, to be allowed to them as payment for the engines to the city in whole or in part so far as the same would go. That resolution was lost from the files of the office while I was Clerk and before it was recorded by me. I made diligent search for the same at the request of the members of the fire companies but could never find it. The contract I allude to was also lost. It was never recorded. I saw it in the office while I was Clerk. I made diligent search for the same, while I was Clerk, more than once, at the request of the fire companies but could never find it. The contract provided in terms that the City of Jacksonville should pay to each of the fire companies twenty-five dollars for every hour they worked at a fire in the city. It was made between the fire companies and the city. I don't know what the date of the contract was. I only remember having seen it and reading it over."

James J. Holland swears that he was a member of the City Council of Jacksonville during the year 1875 ; that at that time the fire engines were levied upon by the United

112 SUPREME COURT.

City of Jacksonville v. Ætna Fire Engine Co.—Opinion of Court.

States Marshal to satisfy a debt against the city ; that the matter was referred to a special committee of the Council ; that the committee reported that the engines were not the property of the city, but belonged to the companies ; that upon this report and investigation the engines were released from the levy; that the judgments were against the city for fire apparatus, including these engines.

Jerome C. Andreu swears that he is Clerk of the City Council of Jacksonville, (date of examination August 5, 1882,) and the custodian of the books and the records of the Council. He produces the books from April 24th, 1870, to December 21st, 1874, and from January 11th, 1875, to August 28th, 1879, inclusive. Plaintiffs put in evidence pages 210 to 215 of the record of the proceedings of the Council. It appears from this record that on the 3d of March, A. D. 1871, a resolution was passed by the Council " that the draft given the Friendship Fire Association for $2,000, and by them transferred to Mr. William Jeffreys in part payment for the Steam Fire Engine Ætna, be taken in by the Council and that another draft or drafts be issued in its place on such time and terms as may be agreed upon by the Mayor and Financial Committee and Mr. Jeffreys." In accordance with this resolution the Mayor and Finance Committee, on the 15th of March, A. D. 1871, reported that they had met, considered the matter and had made the following agreement : " The Steam Fire Engine Company Ætna gives the city their note for $3,550.70, payable twenty-five years after date or before, on the following conditions : Payment to be made wholly in work with the Steam Fire Engine Ætna at fires upon such terms as may be agreed upon by the company and the City Council, or in lawful money as said company may desire, together with a mortgage on said Steam Fire Engine Ætna, for said amount of $3,550.70. The company reserving the right to use and control said engine

with all the apparatus belonging thereto at all fires in said city and at all other times in a proper manner and in accordance with the laws and ordinances of the city, the city to give Mr. Jeffreys her notes for $3,550.70, payable at the First National Bank of New York, as follows, to wit: $550.70, payable June 1, 1871; $500, payable September 1, 1871; $500, payable January 1, 1872; $1,000, payable April 1, 1872, and $1,000, payable January 1, 1873, all bearing interest at the rate of eight per cent." Then follows a mortgage from the Steam Fire Engine Company Ætna to the City of Jacksonville. This mortgage covers the engine and apparatus, the company reserving only the right to use and control said engine with all the apparatus belonging thereto at all fires that may occur in said city and at all other times in a proper manner, and in accordance with the laws and ordinances of the City of Jacksonville. The condition of the mortgage is, that if the said company shall and do well and truly pay or cause to be paid unto the City of Jacksonville the amount named in the note ($3,550.70) according to the terms and conditions thereof, then these presents shall become void, &c. The note given by the company was as follows:

"$3,550.70—Twenty-five years after date or before, for value received, the Steam Fire Engine Company Ætna promises to pay the City of Jacksonville, Florida, the sum of thirty-five hundred and fifty dollars and seventy one-hundredths, payment to be made partly or wholly in work with the Steam Fire Engine Ætna at fires, upon such terms as may be agreed upon by the company and the City Council, or in lawful money, as said fire company may desire."

The report of the committee recommending this settlement of the matters pending between the city and the company was adopted, and a resolution was passed directing the Mayor and Clerk to execute the notes in accordance

with the report. The resolution provided that " these notes take the place of any and all drafts heretofore given to said Steam Fire Engine Company. Ætna or Friendship Fire Association." Here follow in the record some proceedings of the City Council in reference to the cancellation of bonds and coupons of the city. The record containing the proceedings of the Council in reference to a suit by Jeffreys against the city follows next in the record. These proceedings narrate that the United States Marshal had consented to receive the amount of a judgment against the city and interest to January 1, 1876, $2,374.27 in city warrants, upon certain conditions. Further proceedings showing the appropriation of $2,000 by the city to the same judgment are in evidence. With this the testimony of the plaintiffs concludes.

Peter Jones, for the defence, is sworn. He says that he has resided in Jacksonville about fifteen years ; that he has held the position of Mayor of the city six times, first in 1869, 1870, 1871, " and others " to '81 ; that he was Mayor in 1875 ; that according to his recollection the Ætna Steam Fire Engine Company had previously purchased the steam Fire Engine Ætna from Jeffreys & Co., of Pawtucket, Rhode Island ; that the city did not purchase the engine ; that the company having purchased it had it in their possession, having paid part of the purchase money and gave some notes which were not paid at that time; that the City of Jacksonville assumed the outstanding debt of the company for the engine and took a mortgage on the engine as security. The mortgage before described is identified by this witness as the mortgage given. He says that it is his impression that the city paid the outstanding debt of the company ; that the company has always retained possession of the engine, and that so far as he knows " they have not repaid the city the debt paid by the city for them."

This witness swears that he was Mayor at the time the question came up as to paying " the companies of the fire companies " for services to be rendered by them at fires ; that he drew up and submitted to the City Council of Jacksonville, as Mayor of said city, an ordinance after the ordinance of the city of Charleston, S. C., applying to their fire department, allowing compensation of so much per hour while on actual duty at fires ; that this ordinance was submitted to the Council by him as Mayor, and that to the best of his recollection it was not passed. He states that he cannot say that there was any action taken by the Council on the ordinance; that " it was too far back," but that so far as he can remember, and according to his re-membrance, no positive action was taken, and that to the best of his recollection he never signed such an ordinance.

The printed book containing the ordinances of the city was admitted in evidence, which closed the evidence for the defence.

The charges for services by the company and for which this suit is brought, commence February 12th, 1871, and extend through the years 1871, 1872, 1873, 1874, 1875, 1876, 1877 and to July 28, 1878. The charge made in the bill of particulars is for 276 hours actual labor at $25 per hour ($6,900), and the city is credited with $3,550.70, the amount of the note of the company. The referee finds that the services were rendered as charged for ; that for such labor and services the City of Jacksonville had agreed to pay the company a compensation of twenty-five dollars per hour for every hour of actual service rendered by them at fires ; that such agreement was made previous to the rendition of any of the services set forth in the declaration ; that the company was justly indebted to the city in the sum of $3,550 for money advanced to, or loaned to said company to pay the amount due as balance of the purchase

116        SUPREME COURT.

money due William Jeffreys and found against the city for the sum of $4,405.22-100, and one hundred and twenty-two dollars costs.

Upon this finding of the referee the judgment of the court was entered, a motion for new trial by the defendant having been previously denied by the referee.

What is the rule of law to be applied to this evidence?

Looking at the testimony in this record, and especially to the ordinances of the city and the constitution of the association, it is apparent that the organizations or associations, whose worthy and commendable purpose is the protection of property in Jacksonville from fire, are volunteer organizations, as distinct from organizations entitled to receive compensation, either from the individual, in whose direct benefit the service results, or from the city, having power under the law of its organization to provide against destruction and loss incident to the ravages of fire. The service shown by this record was not distinctly for the city as a corporation, and while there may have been a duty of some sort resting upon the city to provide means for extinguishing and preventing fires, still the simple fact that A, B or C assisted in protecting or rescuing the property of D, E or F from fire would not result, in the absence of an express contract to that effect, in any obligation of the city to pay any compensation to the party rendering the service, and unless the city promised expressly to pay for the service, it is no more liable than it would be for the construction of gas pipes or the appliances incident to water supply furnished individual residents within the limits of the municipal corporation.

The question therefore as to the power of the city to make the contract claimed to exist in this case, and the other questions of like character which were discussed, do not arise unless such contract is shown to have been made at

the time alleged, and existed and continued as claimed by plaintiffs.

No obligation to pay the members of a volunteer association for the extinguishment of fires in a municipal corporation arises or is implied from the rendition of such service. The law of their organization, the ordinances of the city, and the constitution of the company, as shown by this record, is that their service is voluntary and without pay, and if they claim compensation the burden of proof is clearly upon them to satisfactorily show a contract to that effect.

The finding of the referee here is that the services rendered by this company were rendered under a contract made with the city before February 12, 1871.

As to the matter of the date of the alleged contract, the only witness who swears that any such contract existed, (and he says that it was lost while he was clerk,) says: " I don't know what the date of the contract was; I only remember having seen it and reading it over." This witness was the Clerk of the Council for the years 1873, 1874 and 1875. He swears simply that it was made previous to his term of office. There is, therefore, not a particle of evidence in this record showing the existence of any such contract anterior to the 12th of February, 1871, as found by the referee. It is upon the testimony of this witness that this finding is for the most part based.

As to the contract and its terms : The testimony of this witness is not to the effect that such a contract continued without modification or adjustment or settlement of accounts between the parties, from the 12th of February, 1871, to July 28th, 1878, as found by the referee. This witness, as will be seen by reference to his testimony, as it appears in the previous portion of this opinion, says that during the time he was in office (1873, 1874, 1875) the city

" passed a resolution transferring the Ætna and other engines to the fire companies and the amounts due the fire companies under a contract previously made with them, and to my term of office, to be allowed to them as payment for the engines to the city, in whole or in part, so far as the same would go."

It may be remarked here that this resolution, which it was the duty of this witness, as clerk, to record and take care of, was (like the contract, to the reading and seeing of which he swears) not recorded, but according to his own testimony " was lost from the files of the office while I was clerk, and before it was recorded, and was never recorded by me." This witness says that there was some arrangement by which the sums due under this alleged contract were to be allowed as payment for the engines to the city, in whole or in part, so far as the same would go. Now, if there is one thing established by the evidence of both the plaintiffs and defendant, it is that the city did not own these engines, or claim to own them, at any time during the term of office of this witness, (1873, 1874 and 1875,) and the view that there were sums due the city in payment for engines, so far as it involves the idea of ownership by the city at any time, is negatived by the records of the council, by the acts of the company itself, and by the testimony of the person who was Mayor at the time the question of paying " the companies of the fire companies for services to be rendered by them at fires " came up.

Again, as to the matter of this alleged contract anterior to the 12th of February, A. D. 1871 : not only do the plaintiffs fail to prove it by the records or files of the corporation ; not only is the existence of such a contract continuing from year to year inconsistent with the testimony of the person who was Mayor for the years 1869, 1870 and 1871, the time during which he says the question as to

paying the fire companies came up, but it is inconsistent with the provisions of the contract of the 10th of March, 1871, between the company and the city, which appears upon the records of the council, and which plaintiffs, themselves, here introduce in evidence. It appears that before March 1st, 1871, the city gave its draft to this company for $2,000, upon what account the record does not disclose, except that it was used in payment for the engine. For some reason, which this record does not disclose, the city failed to pay this draft, and it was protested in the hands of William Jeffreys, who had received it of the company in part payment for their engine. On the 3d of March, 1871, the council appointed a committee to take up this draft it had given the company, and substitute others. On the 15th of March, the committee reported that they had made an agreement, the terms of which were that "the Steam Fire Engine Company Ætna gives the city its note for $3,550.70, payable twenty-five years after date or before, on the following conditions: Payment to be made wholly in work with the Steam Fire Engine Ætna at fires *upon such terms as may be agreed upon by the company and the City Council*, (italics by the court) or in lawful money as said company may desire, together with a mortgage on said Steam Fire Engine Ætna for said amount of $3,550.70. The company reserving the right to use and control said engine with all the apparatus belonging thereto at all fires in said city and at all other times in a proper manner and *in accordance with the laws and ordinances of the city*." (Italics by the court.) Such a mortgage containing these recitals appears upon the records of the City Council, and the note given by the company, for a then admitted indebtedness by it to the city in the sum of $3,550.70, recites that payment of this sum is "to be made partly or wholly in work with the Steam Fire Engine Ætna at fires *upon such terms as may be agreed upon by the*

*company and the City Council*, (italics by the court) or in lawful money as said fire company may desire," and the note was payable " twenty-five years after date or before." This contract shows an admitted indebtedness of the company to the city upon the 10th of March, A. D. 1871, and that the company was to pay it partly or wholly in work upon terms to be agreed upon by the parties. This contract, the existence of which is admitted, is plainly inconsistent with the then existence of any antecedent contract to be binding upon the parties after the date of this mortgage. The compensation to be paid this company, and which was to be allowed only to the extent of its debt, was by this agreement to be fixed in future. The finding of the referee as to this contract is entirely negatived by this evidence of the plaintiffs, and even if it is admitted that there was such a contract as plaintiffs' witness, Christy, describes, and which the referee found existed anterior to the date of this note and mortgage, such contract ceased to be effective or of any force after the 10th of March, A. D. 1871, the date of the mortgage recognizing a then present indebtedness by the company to the city in the sum of $3,550.70-100, and providing a method of its payment within twenty-five years thereafter. Again this mortgage only reserves the right in the company to use and control the engine and apparatus at all fires that may occur in the city and at all other times in a proper manner " and in accordance with the laws and ordinances of the City of Jacksonville," and the laws and ordinances of the city nowhere provide for the compensation here claimed. They nowhere recognize the existence of fire companies, or a fire department entitled to compensation for services rendered by them. Not only is this true, but the Mayor for the years 1869, 1870, 1871, 1875 " and others to 1881," swears in effect that to the best of his recollection there was no such contract and that a resolution

suggested or offered by him covering the subject was not passed.

After repeated careful examinations of this record, the moral conviction left upon our minds is that the relations existing from March 10th, 1871, to the commencement of this suit, are fixed by the contract between the parties, dated March 10th, 1871. Under this the plaintiffs are entitled to compensation looking alone to the discharge of this debt. No existing contract is shown authorizing anything beyond an allowance upon their debt. Plaintiffs are, therefore, entitled to no judgment against the defendant. Nor do we think that this conclusion is necessarily in conflict with the testimony of Christy in this case. He speaks of seeing a contract, but states that he does not remember its date. There may have been such a contract anterior to the 10th of March, A. D. 1871, when there was an adjustment of the matters between the company and the city, but after that it is clear that the relations of these parties are fixed by the contract of that date, which adjusts the then debt of the company to the city, and provides for its payment. Any compensation to be allowed the company under it was to be subsequently agreed upon by the parties, and no compensation beyond the debt is authorized by or consistent with its terms or with the laws and ordinances of the city to which reference is therein made. We think a clear case is made for the defendant by this record.

Judgment reversed, with directions as to proceedings upon the demurrer, and new trial awarded.